UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VERNON WILSON, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | )   Case No. 4:13CV02164 AGF |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Wilson's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. On March 3, 2011, a jury convicted Petitioner of four counts of violating 18 U.S.C § 242 (depriving others of their due process rights), based on the assaults of four inmates (Jimmy Todd, Jonathan Garrett, Gary Gieselman, and William Hawkins) between July and November 2005 in the Washington County, Missouri, jail while Petitioner was the chief administrator of the jail; and two counts of violating 18 U.S.C. § 1001 (making false statements), based on Petitioner making false statements to an FBI agent during the investigation of the assaults. This Court sentenced Petitioner to a total of 120 months in prison followed by three years of supervised release. On August 2, 2012, Petitioner's convictions and sentences were affirmed on direct appeal.

Petitioner now moves to set aside his convictions and sentences pursuant to 28 U.S.C. § 2255, claiming eight grounds of ineffective assistance of defense counsel.[1] Petitioner claims that defense counsel was ineffective in failing to: (1) interview or subpoena the victims and obtain medical records (presumably Gieselman's, the only victim whose injuries required medical attention); (2)(a) negotiate a favorable plea offer (like the one the government had previously made for 36 months' imprisonment), and (2)(b) inform Petitioner of the expiration date of the 36-month offer before it had expired;[2] (3) interview or present at trial former employees and colleagues of Petitioner "who could have given positive information to [his] character and non-violent nature spanning 30 years in law enforcement"; (4) coherently examine and cross-examine witnesses instead of asking nonsensical questions; (5) effectively cross-examine investigating FBI agent Patrick Cunningham with respect to an alibi defense, and present Petitioner's wife as an alibi witness; (6) permit Petitioner to testify, knowing that

---

[1] Burton Shostak, referred to herein as defense counsel, was retained by Petitioner and represented him before and during his trial. After the trial, but before sentencing, Petitioner retained new counsel and Matthew Radefeld and Daniel Juengel represented Petitioner at sentencing and on appeal.

[2] This claim is stated as follows:

> [Defense counsel] failed to negotiate a plea agreement. The U.S. Attorney offered 36 months, in the presence of the judge, or stated they would entertain a counter-offer within 24 hours. Well within this time period, I contacted [defense counsel] and told him to accept their offer with nolo contendere. [Defense counsel] said to proceed to his office to sign papers, that it was a "Deal." Upon arrival at his office, he then stated that the deal was withdrawn. [Defense counsel] failed to pursue counter-offer or other remedy.

(Doc. No. 1 at 5.)

Petitioner wished to do so; (7) procure witnesses to "solidify [Petitioner's innocence]"; and (8) "address possible departure from agreed upon jury instructions." On October 29, 2014, an evidentiary hearing was held on Ground Two. For the reasons set forth below, Petitioner's motion shall be denied in its entirety.

## BACKGROUND

**Plea Offer, Trial, and Sentencing**

Petitioner was indicted on July 15, 2010, and several days later retained defense counsel. The record establishes that on October 1, 2010, the government sent defense counsel a written proposed plea agreement, pursuant to which Petitioner would plead guilty to all counts except Count III (the count involving the assault of Gieselman), in exchange for the government dismissing Count III, and an advisory guidelines sentencing range of 37 to 45 months' imprisonment. The letter stated that "if the defendant pleads guilty to Count III, his [guidelines range would be 62-78 months]. If convicted of Count III at trial, his [guidelines range would be 87-101 months]." (Doc. No. 37-2.) The letter gave counsel until 5:00 p.m. on November 19, 2010, to inform the government if Petitioner intended to accept the plea offer.

On November 8, 2010, the trial date was reset from December 6, 2010, to February 28, 2011. A final pretrial conference was held in open court, with Petitioner present, on Wednesday, February 23, 2011. Upon inquiry by the Court as to whether the parties had engaged in plea negotiations, the prosecuting attorney advised the Court that "back in the fall" the government had made a plea offer but that the offer had not been accepted and had expired in November. The Court ascertained that the government

3

"would not be offended" if defense counsel reopened negotiations for a plea offer, even for one with the same terms as the offer that had expired, and encouraged the parties to engage in good faith plea discussions in the days leading up to trial. (Doc. No. 19-1 at 4-5.)

No agreement was reached and the four-day trial commenced on February 28, 2011, as scheduled. In affirming Petitioner's conviction, the Eighth Circuit summarized the government's evidence at trial as follows:

> During his tenure as the chief administrator of the Washington County Jail in Missouri, [Petitioner] either personally injured or caused the injuries of four prisoners between July 2005 and November 2005.
>
> On July 27, 2005, a pretrial detainee, Jimmy Todd, attracted attention by yelling and generally being "annoying." The attending jailors informed [Petitioner] about Todd's disruptive behavior. [Petitioner] instructed the officers to move Todd to a special cell, designated "C tank." C tank was known as the "rougher tank" because it contained Thomas Mackley – a detainee who was known to be violent. One officer questioned [Petitioner]'s order to place Todd in C Tank with Mackley. In response, [Petitioner] pointed to his badge and said, "I'm the [expletive] Major." Before the officers placed Todd in C Tank, [Petitioner] spoke with Mackley. After the officers placed Todd in C Tank, [Petitioner] said to the cell occupants, "Have fun, boys." Soon afterwards, Todd began beating on the door of the cell, pleading, "[g]et me out of here." The officers removed Todd from the cell and observed that his face was bloody and swollen. [Petitioner] then asked Todd, "Did I get my point across?" [Petitioner] later gave cigarettes as a reward to Mackley and his cellmates who battered Todd.
>
> On August 14, 2005, Jonathan Garrett, also a pretrial detainee, rapped and sang loudly. Corrections officers Valeria Wilson ("Valeria") and Jessica Reed asked Garrett to be quiet, but Garrett continued to rap loudly. Valeria called her father, [Petitioner], and explained to him the problem she was having with Garrett. [Petitioner] later arrived at the jail with four officers. [Petitioner] walked into Garrett's cell and stated, "Hello, I'm Major Vern [Petitioner]. I run this jail." [Petitioner] mentioned Valeria's relation to him and then proceeded to hit Garrett in

4

the head four to six times, so that "almost after every strike [Garrett's] head bounced off the concrete wall that was behind him." [Petitioner] then put his knee on Garrett's chest and yelled in his face.

On September 29, 2005, Gary Gieselman, another pretrial detainee, yelled and swore at Valeria. Valeria reacted by putting Gieselman in C Tank with Mackley. Valeria then told [Petitioner] that Gieselman annoyed her. [Petitioner] called Gieselman over and told him in front of the other prisoners, including Mackley, that his daughter Valeria was "not going to have any problems in his jail." [Petitioner] then nodded his head and "smirked" at Mackley. After [Petitioner] left, Mackley told the others in the cell that they would probably "be rewarded" if they assaulted Gieselman. After a brief discussion, several of the prisoners assaulted Gieselman. By the time they finished, blood covered Gieselman, and "[h]e could barely stand up." Gieselman's medical records showed that he sustained gross swelling in his face and eye, a lacerated lip, multiple facial wounds, and a swollen ear. A CT scan further showed a fractured orbital bone. In relation to this incident, inmate Rodney Rawlins testified that the prisoners had previously decided that they would not "beat up" Gieselman, unless [Petitioner] stopped by the cell after Valeria. The next day, [Petitioner] visited the cell and gave cigarettes to the prisoners who assaulted Gieselman.

On November 6, 2005, arrestee Billy Hawkins was "banging" and "clanging" on the cell door. [Petitioner] walked up to Hawkins's cell and asked, "Do you know who the [expletive] I am[?]" Hawkins replied, "Yeah, you're the Major." [Petitioner] then hit Hawkins in the face two to three times, beating his head against a concrete wall.

A former corrections officer in the jail, Michael Hahn, complained about [Petitioner]'s maltreatment of these prisoners. Based on these complaints, FBI Special Agent Patrick Cunningham began to investigate. As a part of his investigation, Special Agent Cunningham spoke to [Petitioner] and informed him that he was investigating the possible abuse of Todd and Gieselman. In December 2008, [Petitioner] made two false statements to Special Agent Cunningham about his involvement in the incidents involving Todd and Gieselman.[3]

---

[3] Petitioner told Cunningham that (1) he could not recall the name Gary Gieselman, how he got to the jail, what he was charged with, or who brought him to the jail, and (2) that the Washington County Sheriff, Petitioner's political rival, made the decision to move Todd into Mackley's cell on July 27, 2005, a decision Petitioner advised against. (Case No. 4:10CR00390 AGF, Doc. No. 72 at 77-88.)

At the conclusion of the investigation, authorities arrested [Petitioner] and charged him with four counts of violations of constitutional rights and two counts of making false statements. At his trial, jailers, inmates, and deputies with knowledge of the facts – including his daughter[4] – testified about the four assaults.

*United States v. Wilson*, 686 F.3d 868, 870 (8th Cir. 2012).

At the close of the government's case, the defense also rested. The Court conducted a colloquy with Petitioner out of the hearing of the jury, ascertaining that he understood that he had the right to testify, and that after discussing the matter with defense counsel, it was Petitioner's desire not to testify. The Court emphasized that the determination about whether or not to testify was solely Petitioner's and not defense counsel's, and Petitioner reasserted his wish not to testify. (Doc. No. 19-2 at 4-7.)

A bench conference followed, with defense counsel stating that he wished "the record to be clear" regarding plea negotiations in the case. He continued that "sometime in 2010" the government had made an offer of three years' imprisonment to dispose of the case. The prosecuting attorney then explained to the Court that the plea offer had been for a guidelines range of 37 to 46 months in exchange for a plea of guilty to all the counts except for the count involving the assault of Gieselman; that the offer had an expiration date of the Friday before the week of Thanksgiving (2010) and had been presented "well in advance" of that date; and that Petitioner rejected the offer and defense counsel told the government that Petitioner was not interested in any other offer because he believed he was innocent. *Id.* at 11-12.

---

[4] Valeria Wilson testified on behalf of the government in return for a lesser sentence to obstruction of justice charges related to the assault of Gieselman.

The prosecuting attorney continued that on the Wednesday or Thursday prior to trial, the government made an offer of 51 to 63 months' imprisonment in exchange for a plea of guilty to all counts, and this offer was rejected at about 5:30 p.m. that Thursday. Then after the first witness testified, defense counsel approached the government and asked for a plea offer to two of the deprivation of rights counts, a request the government refused. Defense counsel did not contradict the government's version of plea negotiations. *Id*. at 12-13.

The Court determined that the advisory guidelines sentencing range was 97 to 121 months on the deprivation of rights counts, and 60 months on the false statements counts. The 97 to 121 month range was the result, in part, of an enhancement to Petitioner's base offense level in light of the serious bodily injury sustained by Gieselman. The Court sentenced Petitioner to 120 months on each of the deprivation of rights counts and 60 months on each of the false statements counts, followed by three years of supervised release on each count, with all sentences to run concurrently.[5] On direct appeal, the Eighth Circuit affirmed this Court's application of the sentencing enhancement noted above. *Wilson*, 686 F.3d at 873-74.

**Federal Habeas Claims and Evidentiary Hearing**

As noted above, Petitioner now asserts that defense counsel was ineffective in failing (1) to interview or subpoena the victims and obtain the victims' medical records (presumably, Gieselman's); (2) to secure a favorable plea offer, and to inform Petitioner

---

[5] The Court also ordered restitution to Gieselman in the amount of approximately $44,000.

of the expiration date of the October 2010 offer; (3) to interview or present at trial former employees and colleagues of Petitioner "who could have given positive information to [his] character and non-violent nature spanning 30 years in law enforcement"; (4) to generally effectively examine and cross-examine witnesses; (5) to effectively cross-exam Cunningham with respect to Petitioner's alibi; (6) to permit Petitioner to testify, knowing he wanted to do so; (7) to procure witnesses to "solidify [Petitioner's] innocence" and show that the allegations against him were politically motivated (and that it was his political rival and not him who ordered the victims' moves in the jail); and (8) to "address possible departure from agreed upon jury instructions" that Petitioner brought to defense counsel's attention. In his reply, Petitioner adds the claim that his sentence was improperly enhanced based on matters beyond the indictment and the jury's verdict. (Doc. No. 6.) The Court assumes this refers to the Sentencing Guidelines enhancement due to the serious bodily injury sustained by Gieselman.

In a second reply, prepared with the assistance of appointed counsel, Petitioner characterizes Ground Two as asserting the following: Petitioner told defense counsel to accept the initial offer (of 37 to 46 months in exchange for a partial guilty plea) with the condition that he be permitted to plead nolo contendere. Defense counsel represented to Petitioner that the condition was accepted and that he could sign papers to finalize the plea agreement at defense counsel's office. However, upon his arrival at the office Petitioner was told by defense counsel that the offer had been withdrawn. Petitioner asserted that defense counsel misrepresented the plea offer of the government telling Petitioner it was for a sentence of 36 months, and failed to inform Petitioner of the

8

expiration date of the offer. After "prolonged and careful consideration," Petitioner told defense counsel that he would accept the government's offer without requiring a plea of nolo contendere, but defense counsel failed to convey that acceptance to the government or to re-secure the original plea offer immediately after it was withdrawn so that Petitioner could accept it. (Doc. No. 21 at 1-2.)

At the evidentiary hearing on this claim, Petitioner testified that he had been in law enforcement for approximately 31 years and knew that most cases ended in guilty pleas. He testified that "the only time" he discussed a plea in his case was when he received a plea offer for a 36-month sentence and advised defense counsel he would take the offer if he could plead nolo contendere. As he was driving with his wife to defense counsel's office to accept the offer, he got a phone call from defense counsel telling him that the government "had pulled their offer," and that he would have to "plead guilty to everything" in order to receive a six to nine year sentence. Petitioner testified further that he was unaware of any expiration date for the 36-month offer and that he would "definitely" have accepted it even without a nolo contendere plea. (Doc. No. 39 at 6-10.)

On cross-examination, Petitioner testified that at the time that the 36-month offer was conveyed to him by defense counsel, about three months before trial, he believed (and still believed) that he was innocent and that he had alibi witnesses whom defense counsel could have called at trial to establish his alibi. He believed that the charges against him were the result of political scheming to prevent him from running for sheriff, but he acknowledged that he did not provide defense counsel with the names of witnesses to support this theory. Petitioner acknowledged that after defense counsel told him the

9

36-month offer was off the table, Petitioner did not ask defense counsel to try to negotiate another offer. He also acknowledged that he never brought to the Court's attention, such as at the pretrial conference, his contention that defense counsel had not informed him of an expiration date in connection with the 36-month offer. He then stated that he received the government's 36-month offer in court (presumably referring to the pretrial conference), and that he understood that he had 24 hours to consider it. The Court asked for clarification on whether Petitioner was describing a different plea offer than initially described on direct examination. Petitioner stated both that (1) only one offer had been made–the one he described on direct examination that he was told was withdrawn when he was driving in with his wife to accept it, and (2) that a 36-month offer was made in court and he understood that he had 24 hours to accept it. *Id*. at 23-27.

Petitioner's wife testified that sometime before trial, Petitioner called defense counsel and told him he wanted to accept a plea offer. Defense counsel told Petitioner to come to his office and she and Petitioner drove there the next day, but when they got there, defense counsel told them "there was no deal anymore until they go and talk to their superiors and come back with some other offer." *Id*. at 32-35.

Defense counsel testified that he had been practicing criminal law since 1961, primarily in federal court. He could not recall whether he had been appointed to represent Petitioner or retained by Petitioner. He testified that prior to the October 2010 plea offer being conveyed, Petitioner was adamant about going to trial because he did not think he had done anything wrong and believed the charges against him were the result of "a political setup to get him out of office." When shown a copy of the October 1, 2010

10

letter outlining the government's plea offer, defense counsel testified that he remembered reviewing the offer with Petitioner (in defense counsel's office within approximately one week of receiving the letter), because it struck him as unusual that Petitioner could plead guilty to five counts of the indictment and receive less time in prison than if he pled to one count. Defense counsel felt certain that, in accordance with his usual practice, he gave Petitioner the letter so that Petitioner could read it.

Defense counsel could not specifically recall discussing the expiration date with Petitioner, but he testified that as a general practice he would have "absolutely" discussed the matter with a client and relayed its significance. Defense counsel testified that after seeing the letter, Petitioner told him he wanted to go to trial, and at no time prior to trial did Petitioner say he wanted to plead guilty. Defense counsel testified that sometime before the November 19, 2010 expiration date, he told the prosecuting attorney that Petitioner would be going to trial. Defense counsel did not recall the government making another offer in the days leading up to trial. He did recall talking to Petitioner about a nolo contendere plea, but defense counsel believed that was after trial had commenced. *Id*. at 35-47.

The prosecuting attorney testified about the October 2010 offer, and stated that prior to its expiration date, defense counsel informed her that Petitioner would not accept the offer or any other offer because he thought he was innocent, and wanted to go to trial. She testified that she could not recall approximately how far in advance of the expiration date she spoke with defense counsel but she knew it was not "at the 5 o'clock hour on November 19." *Id*. at 64-71.

11

**DISCUSSION**

A state criminal defendant has a Sixth Amendment right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To succeed on his ineffective assistance of counsel claims, Petitioner must demonstrate (1) that his counsel's performance "fell below an objective standard of reasonableness," and (2) "that the deficient performance prejudiced the defense." *See id*. at 687-88. In measuring counsel's performance, courts apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689 (citation omitted).

Turning first to Petitioner's claim that defense counsel was ineffective in the plea bargaining stage of the case, it is clear that a defendant's Sixth Amendment right to counsel extends to this stage of a criminal case. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (citing *Missouri v. Frye*, 132 S. Ct. 1399 (2012)). The two-part *Strickland* test governs such claims. Specific to the plea context, defense counsel has a duty to communicate to a client a formal, favorable plea agreement from the government. *Frye*, 132 S. Ct. at 1408. To establish prejudice from the deficient performance of counsel in a case involving a plea offer, a petitioner is required to demonstrate a reasonable probability that he would have accepted the plea offer had he been provided with effective assistance of counsel. *See, e.g.*, *Merzbacher v. Shearin*, 706 F.3d 356, 366 (4th Cir. 2013) (citing *Frye*, 132 S. Ct. at 1409; *Lafler*, 132 S. Ct. at 1385).

The Court's determination of Petitioner's entitlement to relief under section 2255 on his second ground for relief depends on a credibility determination. "In assessing the

credibility of witnesses, the court properly may consider variations in demeanor and tone of voice, as well as documents and objective evidence that may contradict a witness' testimony or reveal inconsistencies. Additional considerations may include the witness' motive to lie and the specificity of a witness' statements." *Jackson v. United States*, No. 5:07-CR-110-FL-1, 2014 WL 7149635, at *4 (E.D.N.C. Dec. 15, 2014) (citations omitted).

The court, having heard the testimony at the October 29, 2014 evidentiary hearing, and having had the opportunity to observe the witnesses and their demeanor, finds that defense counsel's account is credible and consistent with the record as a whole, whereas Petitioner's account is not credible. The Court credits defense counsel's testimony that he reviewed with Petitioner the October 1, 2010 letter outlining the government's plea offer, and gave Petitioner the letter to read, a letter which included the expiration date of the offer. It is true that defense counsel's recollection of the plea negotiations in the case was hazy on certain points, such as not recalling the government's offer in the days leading up to the trial, an offer the Court concludes was made, based on the prosecutor's representations to the Court at the bench conference described above. But defense counsel's testimony that he gave Petitioner the October 1, 2010 letter to read was credible, as it was based on defense counsel's recollection of this case as well as on his general practice and long experience as a criminal lawyer. *See, e.g., Powell v. United States*, No. 5:04-CR-00356-F-1, 2014 WL 7182940, at *19 (E.D.N.C. Dec. 16, 2014) (crediting plea counsel's testimony that she conveyed a plea offer, based on her general practice to convey such offers to her clients). Furthermore, defense counsel's testimony

13

that Petitioner rejected the offer and that defense counsel told this to the prosecuting attorney well in advance of the expiration date is credible, and is supported by the prosecuting attorney's representations to the Court at the bench conference during trial. The Court notes that defense counsel's testimony on these matters is not contradicted by any documentary evidence.

Petitioner's version of the plea bargaining process in the case, on the other hand, is contradictory, confused, and inherently not credible. It is not reasonable to think that Petitioner, who was in law enforcement for approximately 30 years at the time he was charged, and knew about the plea bargaining process in general, would not have known that the government's October 2010 offer had an expiration date, and that rejection of the offer would have removed it from the table. In his reply filed with the assistance of appointed counsel, Petitioner represented that defense counsel told him in his office that the first offer had expired, whereas Petitioner testified at the evidentiary hearing that he received a call from defense counsel with this information while driving to defense counsel's office. Petitioner's confused testimony about the first offer and an offer with a 24-hour expiration period further undermines his credibility on the issue at hand. Lastly, Petitioner did not raise the matter of the expiration date of the first offer at the pre-trial conference when plea negotiations were discussed.

Petitioner's claim that defense counsel was ineffective in failing to negotiate a favorable offer, after Petitioner rejected the October 2010 offer fails as well, as Petitioner testified that he never asked defense counsel to do so before trial, and there is no indication in the record that the government intended to negotiate further, prior to the

pretrial conference.  *See United States v. Lynn*, No. 3:08CR82, 2014 WL 3858543, at *3-4 (E.D. Va. Aug. 5, 2014) (rejecting federal habeas claim that defense counsel was ineffective in failing to negotiate another more favorable plea after the petitioner had rejected an initial deal, where there was no evidence that the government intended to make another offer or negotiate further).  In sum, the court concludes that Petitioner failed to establish an ineffective assistance of counsel claim based on defense counsel's representation with respect to plea negotiations.

Petitioner's remaining claims also fail.  Petitioner's claim that defense counsel did not permit him to testify is defeated by his representations to the Court at the close of the evidence that he knew he had such a right and that it was his decision not to testify.  Petitioner was a mature individual with knowledge of the criminal justice system, and there is no suggestion in the record that he did not understand that the decision whether or not to testify was his.  *See Frey v. Schuetzle*, 151 F.3d 893, 898 (8th Cir. 1998) (holding that a valid waiver of the right to testify may be based on the defendant's silence when his counsel rests without calling him to testify).

Whether to call character witnesses is generally a matter of trial strategy.  *Huls v. Lockhart*, 958 F.2d 212, 217 (8th Cir. 1992).  Petitioner has not identified any of the potential character witnesses he faults defense counsel for not calling, and fails to establish a reasonable probability that the result of the trial, at which overwhelming evidence of Petitioner's guilt was presented, would have been different had counsel called one or more character witnesses for the purpose Petitioner posits.  Thus, this claim is rejected.  *See United States v. Little*, 208 F.3d 216 (6th Cir. 1999).  Similarly,

Petitioner's claim that defense counsel was ineffective for failing to call alibi witnesses fails. *See Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001) (affirming the district court's rejection, without an evidentiary hearing, of a habeas petitioner's claim that counsel was ineffective for failing to call alibi witnesses, where the petitioner's motion did not identify the witnesses or "allude to the substance of their testimony, much less [] set it out in attested detail"); *Campbell v. United States*, No. 1:13CV00169 SNLJ, 2014 WL 4724776, at *13 (E.D. Mo. Sept. 23, 2014) (same); *United States v. Maybee*, No. 3:11-CR-30006-002, 2013 WL 3930562, at *6 (W.D. Ark. July 30, 2013) (same) (citing cases).

The record establishes that defense counsel was provided copies of Gieselman's medical records during discovery, and Petitioner has failed to articulate how the result of the trial would have been different had defense counsel interviewed Gieselman and/or the other victims. There is nothing to indicate that Gieselman or any of the other victims would have provided testimony favorable to Petitioner.

Petitioner's claim that counsel was ineffective in failing to bring up an instructional error does not warrant habeas relief. Petitioner does not specify which instruction or instructions he found objectionable, or show that the outcome of the trial might have been different had defense counsel raised an objection. *See, e.g., Close v. United States*, 679 F.3d 714, 721 (8th Cir. 2012) (rejecting claim that defense counsel was ineffective in failing to object to an erroneous instruction, where the petitioner did not identify what instruction should have been requested, or show a reasonable probability of a different verdict had a correct instruction been given).

Lastly, the Court's observance of defense counsel's performance at trial, and a review of the trial transcript, does not support Petitioner's claim that counsel provided constitutionally ineffective assistance during trial, including during the cross-examination of Cunningham. Although some questions defense counsel posed to witnesses may have required clarification, this did not render his overall performance below an objective standard of reasonableness. *See United States v. Alex Janows & Co.*, 2 F.3d 716, 721 (7th Cir. 1993) (recognizing the district court's "superior position to observe and assess the performance of counsel throughout the pre-trial and trial phases of the litigation"); *Avendano v. United States*, No. 02 CR. 1059 (LTS), 2009 WL 137035, at *3 (S.D.N.Y. Jan. 21, 2009) (relying in part, in denying a § 2255 claim of ineffective assistance of defense counsel, on the court's own observation of defense counsel's cross-examination of a witness).

Petitioner's claim brought up for the first time in his pro se reply, regarding the enhancement of his advisory guidelines sentencing range due to Gieselman sustaining serious bodily injury, is not properly before the Court. *See Smith v. United States*, 256 F. App'x 850, 852 (8th Cir. 2007) (citing *Hohn v. United States*, 193 F.3d 921, 923-24 n.2 (8th Cir. 1999)).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Vernon Wilson's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence is **DENIED**. (Doc. No. 1.)

**IT IS FURTHER ORDERED** that this Court will not issue a Certificate of Appealability as Petitioner has not made a substantial showing of the denial of a federal constitutional right as required by 28 U.S.C. § 2253(c)(2).

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 26th day of May, 2015.